CR 23-98 MJD/JFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHARLES RAY WORKMAN,

        Defendant.

**INDICTMENT**

18 U.S.C. § 1343

THE UNITED STATES GRAND JURY CHARGES:

### COUNTS 1-4
(Wire Fraud)

1. At times relevant to the indictment:

    a. Defendant CHARLES RAY WORKMAN was the owner of MN Crete Pools, LLC.

    b. MN Crete Pools was a Minnesota company that marketed and sold concrete swimming pools to families and individuals in and throughout the Twin Cities area of Minnesota.

2. Beginning in or about 2021 and continuing until in or about 2022, in the State and District of Minnesota, the defendant,

**CHARLES RAY WORKMAN,**

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.



SCANNED
MAR 15 2023
U.S. DISTRICT COURT MPLS

3. It was part of the scheme that defendant WORKMAN marketed concrete swimming pools and pool installation services to customers around Minnesota.

4. It was further part of the scheme that defendant WORKMAN advertised on the website and social media pages for MN Crete Pools.

5. It was further part of the scheme that defendant WORKMAN solicited and received down payments from his customers for the concrete swimming pools. WORKMAN falsely represented to his customers that in exchange for their down payments, WORKMAN could "secure" a spot for that customer in MN Crete Pool's workload for the installation of a concrete swimming pool the same year their down payment was provided.

6. Between in and around April 2021 and June 2021, WORKMAN collected down payments from approximately one customer a month and subsequently failed to complete pool projects for any of those customers. Despite this, WORKMAN increased the rate at which he signed up customers and collected down payments throughout the remaining of the summer months. During this time, WORKMAN represented he would take only a few weeks to finish new customers' pool projects, despite knowing he had still not fully completed any of the pool projects that he started earlier that year. WORKMAN sometimes falsely represented to customers he only had one spot left available for a certain customer, before continuing to solicit and signup customers after making that representation.

7. It was further part of the scheme that defendant WORKMAN regularly converted some or all of the customers' payments to his own use. On occasion,

WORKMAN pocketed his customers' down payments and used their money for his own personal use and benefit, including making a more than $3,000 child support payment, spending more than $18,000 at Casino A, and spending more than $6,000 on a horse and saddle, in addition to what he received from MN Crete Pools' payroll. WORKMAN's horse and saddle purchase with MN Crete Pools' funds was made in or around August 2021.

8. It was further part of the scheme that defendant WORKMAN at times solicited payments in addition to the down payment from his customers for the excavation of a hole in their backyard or by falsely representing that he ordered equipment for his customers, despite knowing that he had not ordered any equipment and that he was not able to complete most of the pool projects he started.

9. It was further part of the scheme that defendant WORKMAN's misuse of his customers' money left MN Crete Pools unable to meet its obligations to its customers and unable to refund its customers' money, even though many customers never received the swimming pool they had purchased.

10. It was further part of the scheme that defendant WORKMAN falsely represented to some of his customers that each swimming pool would be protected by a "lifetime guarantee." In reality, WORKMAN knew that many of the swimming pools he sold were unlikely to be completed let alone guaranteed.

11. It was further part of the scheme that defendant WORKMAN falsely told customers, as late as early 2022, that his failure to construct and install their pools was due to COVID-related delays, weather, or equipment shortages. In reality,

WORKMAN knew by early 2022 that the delays were caused by his own failure to fully utilize his customers' down payments for completion of the promised work.

12.     In all, defendant WORKMAN fraudulently solicited and received more than $750,000 in payments from customers for whom he did not construct and install a complete and operational concrete swimming pool.

13.     On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant,

**CHARLES RAY WORKMAN,**

for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds:

| Count | Date of Wire (on or about) | Wire Details |
|---|---|---|
| 1 | July 29, 2021 | Interstate wire transmission crediting the amount of approximately $14,392 from Victim A's cashier's check ending 5509 to defendant's Riverland Bank account ending 7028 |
| 2 | August 27, 2021 | Interstate wire transmission crediting the amount of approximately $53,400 from Victim B's cashier's check ending 3407 to defendant's Riverland Bank account ending 7028 |
| 3 | October 21, 2021 | Interstate wire transmission crediting the amount of approximately $21,887 from Victim C's Royal Credit Union check ending 4137 to defendant's Riverland Bank account ending 7028 |
| 4 | May 11, 2022 | Interstate wire transmission clearing the amount of approximately $25,000 to cash a cashier's check ending 6081 that was given to defendant by Victim D |

All in violation of Title 18, United States Code, Section 1343.

United States v. Charles Ray Workman

## FORFEITURE ALLEGATIONS

14. Counts 1 through 4 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c).

15. If convicted of any of Counts 1-4 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1-4 of the Indictment.

16. If any of the above-described property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____    _____
UNITED STATES ATTORNEY         FOREPERSON